**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-------------------------------------------------------X
UNITED STATES OF AMERICA,

                                                 **ORDER**

       -against-                             09-CR-296 (ADS)

GARRICK LOGAN,

                         Defendant.
-------------------------------------------------------X

GARRICK LOGAN,

                         Petitioner,          **ORDER**

                                             10-CV-2993 (ADS)

       -against-

UNITED STATES OF AMERICA,

                         Respondent.
-------------------------------------------------------X

**APPEARANCES:**

**Loretta A. Lynch, United States Attorney**
**for the Eastern District of New York**
Attorneys for the United States
610 Federal Plaza
Central Islip, NY 11722
        By:  John J. Durham, Assistant United States Attorney

**Grossman, Lavine & Rinaldo**
Attorneys for the Defendant
108-18 Queens Boulevard, 8th Floor
Key Gardens, NY 11375
        By:  Paul Rinaldo, Esq., Of Counsel

**Garrick Logan**
Pro Se Petitioner
#76053-053
Morgantown Federal Correctional Institution
Inmate Mail/Parcels
P.O. Box 1000
Morgantown, WV 26507

**SPATT, District Judge**.

Presently before the Court is a petition by the Defendant/Petitioner Garrick Logan ("Logan") for a writ of habeas corpus, pursuant to 28 U.S.C. § 2255, and a motion for a sentence reduction, pursuant to 18 U.S.C. § 3582(c)(2). For the reasons that follow, the Court finds that Logan's petition for a writ of habeas corpus is denied, but that he is eligible for a sentence reduction and that his sentence shall be modified accordingly.

## I. BACKGROUND

On April 15, 2009, Garrick Logan was arrested in Hempstead, New York after a vehicle and foot pursuit. The Government's investigation revealed that Logan had supplied or attempted to supply cocaine base to a confidential informant ("CI") on at least two occasions. First, on February 18, 2009, Logan supplied 4.36 net grams of cocaine base to his co-defendant, Michael Hibbert ("Hibbert"), who then sold the drugs to the Government's CI. Then, on April 15, 2009, Hibbert met again with the CI and offered to sell him another ten grams of cocaine base. The CI gave Hibbert $750, and Hibbert informed the CI that he needed to obtain the cocaine base from his supplier. The FBI agents conducting surveillance then observed Hibbert walk to another area where he made a number of phone calls.

A few minutes later, a Ford Taurus vehicle arrived at the location and Hibbert entered the passenger side of the automobile, which Logan was driving. FBI agents then approached the vehicle, and Logan sped away from the area. FBI agents and other law enforcement agents engaged in a high speed pursuit for several blocks on busy streets that contained other vehicles and pedestrians. Logan eventually stopped the vehicle, and he and Hibbert exited the automobile and attempted to flee on foot. After a short foot pursuit, both men were apprehended. The law enforcement officials observed Logan drop two plastic bags when he exited the vehicle. A

chemical analysis revealed that the bags contained a total of 17.7 net grams of cocaine base. Thus, when combining the February and April incidents, Logan was accountable for a total of 22.06 net grams of cocaine base.

Logan had a total of three attorneys between the date of his arrest and his subsequent sentencing. His first attorney, Terrence P. Buckely, Esq. was appointed by the Court on April 21, 2009 pursuant to the Criminal Justice Act ("CJA"). According to the Petitioner, this attorney "showed no interest in preparing for his defense." (Petition at 5.) Therefore, the Court allowed this counsel to withdraw from the case after making Logan aware that he needed to obtain a paid attorney.

Thereafter, Logan hired Uzmah Saghir to represent him, and she filed her notice of appearance with this Court on June 25, 2009. On June 26, 2009, the Court held a status conference as to Logan, but Saghir did not appear on time. The hearing was delayed several hours until Saghir finally appeared. On July 30, 2009, this Court held another status conference in this matter at 10:00am. However, once again, Saghir did not appear. This Court called her office and left a message, and put the case on for a second call at 2:00pm. However, Saghir still did not appear. The matter was scheduled for a further status conference on August 5, 2009. This Court stated on the record at that time that if Saghir did not appear for the August 5 conference, it would consider Saghir to have abandoned her representation of Logan. Saghir did not respond to communications from this Court or to the Assistant United States Attorney assigned to this case. On August 5, 2009, Saghir was officially terminated as Logan's attorney. By this time, the Court had appointed a second criminal defense attorney from the CJA panel, Richard A. Miller, Esq., to represent Logan.

On September 25, 2009, pursuant to a plea agreement with the Government, Logan eventually pled guilty to a lesser-included offense of Count One of the indictment, which charged him with conspiracy to distribute and possess with intent to distribute five grams or more of cocaine base in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B). The Pre-Sentence Report ("PSR") filed by the Probation Department found a total drug quantity of 22.06 grams of cocaine base, resulting in a Base Offense Level of 26. In addition, the Defendant was subject to a 2-level enhancement for reckless endangerment during flight per Sentencing Guideline § 3C1.2, resulting in an Adjusted Offense Level of 28. However, because the Defendant pled guilty, there was a three point reduction for acceptance of responsibility, for a Total Offense Level of 25. With a Criminal History Category of II, the guideline range of imprisonment at the time was 63 to 78 months. Under the statutory provisions, the maximum term of imprisonment was 40 years and the minimum term of imprisonment was 5 years. See 21 U.S.C. § 841(b)(1)(B).

On February 12, 2010, Logan was sentenced to 63 months in custody and 4 years of supervised release. This Court adopted the PSR without modification, resulting in a Total Offense Level of 25, a Criminal History Category of II, and a custodial guideline range of 63 to 78 months. The Court found that based upon all the circumstances involved, including consideration of the advisory guidelines and the statutory reasons for sentencing, that the minimum guideline range of 63 months was a reasonable sentence. In particular, the Court noted (1) the nature and circumstances of the offense — illegal drug sales followed by reckless endangerment of a high speed chase; (2) the history and characteristics of the Defendant — such as a good employment record and consistent payment of taxes; as well as (3) the need for the

sentence imposed, including to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense.

On June 28, 2010, Logan commenced this habeas corpus proceeding, filing a motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255.

Effective November 1, 2011, the United States Sentencing Commission ("Sentencing Commission") approved part A of Amendment 750, which altered the offense levels in § 2D1.1 of the U.S. Sentencing Guidelines Manual ("U.S.S.G." or "Guidelines Manual") applicable to crack cocaine offenses (the "Guidelines Amendment"). See U.S.S.G. §2D1.1 (2011). In addition, the Sentencing Commission gave this amendment retroactive application. See U.S.S.G. § 1B1.10(c) (2011).

On November 2, 2011, Logan moved for a reduction of his sentence pursuant to 18 U.S.C. § 3582(c)(2), relying on the Guidelines Amendment. On December 1, 2011, the Government filed an opposition to Logan's motion for a sentence reduction. The Government acknowledged that the Defendant was eligible for a sentencing modification, but that the Court should exercise its discretion not to do so after considering the factors in 18 U.S.C. § 3553(a).

The Court will now address, in turn, both the petition for a writ of habeas corpus and the motion for a sentence reduction.

## II. HABEAS CORPUS PETITION

Logan raises two grounds in his petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2255. First, he contends that both his retained counsel and his court-appointed counsel were ineffective. Second, he asserts that the Court should enter an order to arrest judgment, pursuant to Rule 34 of the Federal Rules of Criminal Procedure ("Rule 34"), due to an alleged error in the

indictment. Relatedly, Logan claims that his court-appointed counsel's failure to file such a motion in a timely fashion contributed to his ineffective assistance of counsel.

## A. **Whether Logan's Petition is Procedurally Barred**

The Government argues that Logan's petition is procedurally barred, because he agreed in his plea agreement "not to file an appeal or otherwise challenge by petition pursuant to 28 U.S.C. § 2255 . . . in the event that the Court imposes a term of imprisonment of 71 months or below." (Gov't Ex. 2 at ¶ 4.) Logan was sentenced to 63 months, and accordingly, the Government argues he has waived his right to challenge his sentence.

"It is by now well established that a knowing and voluntary waiver of the right to appeal is generally enforceable." United States v. Hernandez, 242 F.3d 110, 113 (2d Cir. 2001); see also United States v. Haynes, 412 F.3d 37, 39 (2d Cir. 2005); United States v. Morgan, 406 F.3d 135, 137 (2d Cir. 2005); United States v. Garcia, 166 F.3d 519, 521 (2d Cir. 1999); United States v. Chen, 127 F.3d 286, 289 (2d Cir. 1997); United States v. Yemitan, 70 F.3d 746, 747 (2d Cir. 1995); United States v. Salcido-Contreras, 990 F.2d 51, 53 (2d Cir. 1993) ("In no circumstances . . . may a defendant, who has secured the benefits of a plea agreement and knowingly and voluntarily waived the right to appeal a certain sentence, then appeal the merits of a sentence conforming to the agreement.").

A defendant may also waive his right to bring a petition pursuant to section 2255. See Frederick v. Warden, Lewisburg Corr. Facility, 308 F.3d 192, 195-96 (2d Cir. 2002); Garcia-Santos v. United States, 273 F.3d 506, 508-09 (2d Cir. 2001); Muniz v. United States, 360 F. Supp. 2d 574, 577 (S.D.N.Y. 2005). However, "such waivers are strictly and narrowly construed against the government, in recognition of its greater bargaining power in negotiating and the fact that the government usually drafts plea agreements." Yushuvayev v. United States, 532 F. Supp.

2d 455, 468 (E.D.N.Y. 2008) (citing <u>United States v. Cunningham</u>, 292 F.3d 115, 117 (2d Cir. 2002) and <u>United States v. Ready</u>, 82 F.3d 551, 556 (2d Cir. 1996)).

The Second Circuit has recognized a very narrow set of exceptions to the general rule on the enforceability of waivers, such as where: (1) the waiver was not made knowingly, voluntarily, and competently; (2) the sentence imposed was based on constitutionally impermissible factors; (3) the government breached the plea agreement; or (4) the court failed to enunciate any rationale for the sentence. <u>See United States v. Gomez-Perez</u>, 215 F.3d 315, 319 (2d Cir. 2000).

As an initial matter, the Court finds that the waiver here was entered into knowingly and voluntarily. The record is clear that Logan signed the written plea agreement, and knowingly and voluntarily waived his right to seek habeas relief. Logan stated under oath that he understood the agreement. (Guilty Plea Tr. at 15.) "[T]he district court [i]s entitled to rely upon the defendant's sworn statements, made in open court . . . that he understood the consequences of his plea, had discussed the plea with his attorney, knew that he could not withdraw the plea, [and] understood that he was waiving his right to appeal a sentence below [the stipulated range] . . . ." <u>United States v. Hernandez</u>, 242 F.3d 110, 112 (2d Cir. 2001).

However, the present situation is particularly complicated because Logan essentially alleges that he was ineffectively assisted in making the decision to accept the plea agreement. Thus, "on one hand, rigid enforcement of the waiver rule would make ineffective assistance in advising a criminal defendant to enter into a plea agreement effectively unreviewable, while disregarding the waiver agreement entirely in cases of alleged ineffective assistance would open the door to 'obvious [ ] circumvention of a plea agreement,' permitting defendants to cast any purported defect in the underlying criminal proceeding as a matter of ineffective assistance not

encompassed by the waiver provision." Yushuvayev, 532 F. Supp. 2d at 469 (quoting United States v. Pipitone, 67 F.3d 34, 39 (2d Cir. 1995)). The Second Circuit itself has expressed hesitation in finding that a defendant has waived his right to appeal where the defendant argues that his execution of the waiver was itself the product of ineffective assistance of counsel. See, e.g., United States v. Hernandez, 242 F.3d 110, 113–14 (2d Cir. 2001) ("We have suggested that a plea agreement containing a waiver of the right to appeal is not enforceable where the defendant claims that the plea agreement was entered into without effective assistance of counsel.") (citing cases).

Generally speaking, "[c]laims of ineffective assistance of counsel can survive § 2255 waivers, but only when the claim relates to the negotiation and entry of a plea or sentencing agreement." United States v. Cano, 494 F. Supp. 2d 243, 248 (S.D.N.Y. 2007) (citing Hernandez, 242 F.3d at 114 ("If the constitutionality of [the plea agreement process] passes muster, the agreement's waiver would bar any consideration . . . of issues that fall within the scope of that waiver.")). Thus, the relevant determination is whether Logan is contesting his sentence generally — which would undoubtedly be barred by his waiver — or whether he is contending that the waiver to his right to collaterally attack his sentence, or more generally, his entry into the plea agreement, was predicated upon ineffective assistance of counsel — which would *not* be barred by his waiver.

The Court is mindful that a petitioner such as Logan should not be able to couch his arguments in terms of ineffective assistance of counsel, when he is actually challenging his sentence. See Iyer v. U.S., No. 08 Civ. 10455, 2012 WL 383623, at *3 (S.D.N.Y. Feb. 7, 2012). Nevertheless, many of Logan's allegations can be read as contending that it was Singh's and Miller's performance that caused him to accept the plea agreement. (See, e.g. Petition at 10

("[a]fter being confused and frustrated by all the attorney's [sic] drama that were [sic] going on in his case, the defendant signed the plea agreement."). )

Accordingly, the Court deems Logan's waiver in his plea agreement of his right to bring a petition pursuant to 28 U.S.C. § 2255 unenforceable in the context of this action, and shall therefore turn to an examination of the merits of Logan's petition.  See Parisi v. United States, 529 F.3d 134 (2d Cir. 2008) (noting that the "constitutionality of the process by which he waived his right to appeal" would survive the waiver); Frederick, 308 F.3d at 195 ("a waiver of appellate or collateral attack rights does not foreclose an attack on the validity of the process by which the waiver has been procured, here, the plea agreement."); DeRoo v. United States, 223 F.3d 919, 924 (8th Cir. 2000) ("A defendant's plea agreement waiver of the right to seek section 2255 post-conviction relief does not waive defendant's right to argue, pursuant to that section, that the decision to enter into the plea was not knowing and voluntary."); Cross v. Perez, No. 11 Civ. 1186, 2011 WL 4711466, at *9 (E.D.N.Y. Oct. 04, 2011) ("Virtually all of the Second Circuit cases reject a waiver where the defendant attacks the 'process.'").

## B.  Ineffective Assistance of Counsel

### 1.  Legal Standard

Under the well-established Strickland standard, a claim of ineffective assistance of counsel requires a showing that: (1) counsel's performance fell below an objectively reasonable standard of performance; and (2) the deficient performance prejudiced the outcome of the proceeding.  Bierenbaum v. Graham, 607 F.3d 36, 50 (2d Cir. 2010) (citing Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)).  To meet the first prong, Logan must demonstrate "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment."  Strickland, 466 U.S. at 687.

In evaluating the first prong of this test, the Court must "'indulge in a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance,' bearing in mind that '[t]here are countless ways to provide effective assistance in any given case' and that '[e]ven the best criminal defense attorneys would not defend a particular client in the same way.'" United States v. Aguirre, 912 F.2d 555, 560 (2d Cir. 1990) (quoting Strickland, 466 U.S. at 689, 104 S. Ct. 2052, 80 L. Ed. 2d 674)) (alterations in original).

To satisfy the second prong, Logan "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. In this context, "[a] reasonable probability is a probability sufficient to undermine confidence in the outcome." Id.; see also Lindstadt v. Keane, 239 F.3d 191, 204 (2d Cir. 2001) ("The level of prejudice the defendant need demonstrate lies between prejudice that 'had some conceivable effect' and prejudice that 'more likely than not altered the outcome in the case.' ") (quoting Strickland, 466 U.S. at 693. In evaluating prejudice, a court should look to the "cumulative effect of all of counsel's unprofessional errors". Gersten v. Senkowski, 426 F.3d 588, 611 (2d Cir. 2005).

Ultimately, "[t]he court's central concern is not with 'grading counsel's performance' but with discerning 'whether despite the strong presumption of reliability, the result of the particular proceeding is unreliable because of a breakdown in the adversarial process that our system counts on to produce just results.'" Aguirre, 912 F.2d at 560 (2d Cir. 1990) (quoting Strickland, 466 U.S. at 696–97, 104 S. Ct. 2052, 80 L. Ed. 2d 674).

Although the test for ineffective assistance of counsel contains two prongs, the Supreme Court specifically noted that federal district courts need not address both components if a petitioner fails to establish either one. Strickland, 466 U.S. at 697, 104 S. Ct. 2052, 80 L. Ed. 2d

674.  In particular, "a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies." Id.

### 2.  As to Whether the Petitioner Has Demonstrated Ineffective Assistance of Counsel

#### a.  Allegations With Regard to the Petitioner's Paid Counsel

During the period beginning on June 25, 2009 and ending on August 5, 2009, which is the span of time dating from Saghir's filing of a notice of appearance through the day she was terminated as the Petitioner's counsel, Saghir was in the process of being investigated and subject to disciplinary proceedings for her professional misconduct.  On June 29, 2009, an investigating committee (the "Committee"), appointed by the Committee on Grievances, issued a formal statement of charges against Saghir.  On July 8, 2009, the Committee issued an interim order of suspension.  On September 9, 2009, Saghir submitted a letter to the Committee in which she stated that she had resigned from the bar of the United States Court of Appeals for the Second Circuit and would withdraw from the bar of the United State District Court for the Southern District of New York, effective immediately.  Saghir submitted a letter of resignation to the bar of the United State District Court for the Eastern District of New York on the same day. See In re Saghir, 632 F. Supp. 2d 328 (S.D.N.Y. 2009).

By opinion and order of the United States District Court, Eastern District of New York, dated September 17, 2009, Sahir's name was stricken from the roll of attorneys admitted to practice before this court.  In addition, by opinion and order of the United States District Court, Southern District of New York (Rakoff, J.) dated November 30, 2009 (2009 WL 4437951, 2009 US Dist. LEXIS 112657 (S.D.N.Y. 2009)), Saghir's name was also stricken from the roll of attorneys admitted to practice before that court.  Following an investigation, nine charges of

professional misconduct were brought. On May 24, 2011, Saghir was disbarred from practicing law in the State of New York. See Matter of Saghir, 86 A.D.3d 121, 925 N.Y.S.3d 99, 2011 N.Y. Slip Op. 04475 (2d Dep't 2011). The court found that Saghir had neglected multiple federal criminal matters, failed to return an unearned fee, split legal fees with a non-attorney, and had engaged in misrepresentations during the investigation of these matters.

Logan appears to assert that Saghir's approximate more than one month of legal representation amounted to ineffective assistance of counsel, particularly in light of her disbarment. Logan vaguely alleges that she committed fraud and misconduct. However, Logan only makes two specific assertions with regard to her performance. First, Logan argues that Saghir promised him that she could get him a sentence that was less than the statutory mandatory minimum sentence of five years. Thus, by making this promise, Saghir persuaded Logan to obtain her as counsel and pay a $20,000 retainer fee. Second, Logan contends that Saghir continued to visit him in prison after she was disbarred, during which time she gave him a motion that she had prepared for him while she was still his attorney and said that he should file the motion after he entered into a plea bargain, without telling his then current counsel Miller. In addition, Logan claims that these visits after she was terminated as his attorney contributed to his alleged "confusion" leading to his acceptance of the plea bargain agreement.

While Logan asserts that prejudice should be presumed because his former attorney was barred from this Court during his representation, it is not clear how Saghir's performance as to this specific case either fell below an objective standard of reasonableness or how Logan suffered any prejudice. While Saghir was eventually disbarred from the State of New York, and Logan describes the details of her misconduct in that regard, he cannot allege how any misconduct occurred in his particular case.

Saghir only represented Logan for a little more than one month, during which time she had no substantive involvement in the case. While Logan contends that it was Saghir's promises to him that convinced him to hire her in the first instance, this does not necessarily relate to her performance. Rather, it seems that Logan's grievances relate more to the fee he paid Saghir, as opposed to her actual representation. This notion is clear throughout Logan's petition. (See Petition at 6 ("If Ms. Saghir would of [sic] told the defendant the truth that he couldn't get a sentence under the mandatory minimum, the defendant and his family would not have spent their saving [sic] on obtaining Ms. Saghir.").) In fact, Logan requests this Court to order Saghir to reimburse his $20,000 retainer. However, a habeas petition is not the proper vehicle through which to obtain this money. See Shaw v. U.S., 371 F. Supp. 2d 265, 271 (E.D.N.Y. 2005) (Spatt, J.) ("Finally, with regard to Shaw's assertions that Schurr's legal fee in the amount of $50,000 was excessive, the Court notes that a Section 2255 petition is not the proper forum for a fee dispute."). Moreover, even if a promise regarding certain results was made, it is unclear how that actually affected Logan's guilty plea or sentencing.

Logan also asserts that the plea agreement was presented by Saghir "with persuasion as well as coercion based on the motion that she gave the defendant." (Petition at 9.) However, Logan acknowledges that the plea agreement he ultimately accepted, while presented by Saghir, was also presented by his initial attorney and by Miller, his subsequent counsel. Thus, Logan does not allege with any particularity what the persuasion or coercion by Saghir was or how it affected his mental process when a subsequent attorney was presenting the plea agreement for his consideration. Thus, this argument is insufficient to find that Singh's performance either fell below an objective standard of reasonableness or that Logan suffered any prejudice.

As for the actions that Saghir took after she was disbarred and was no longer Logan's attorney, the Petitioner alleges vaguely that she "contributed to my confusion as to how to go about my defense." (Reply at 11.). Although Saghir allegedly told Logan things that were contrary to what Miller was telling Logan at the time, and that Logan's decision-making process was therefore "strongly affected by the conflicting information from Ms. Saghir and Mr. Miller", (Petition at 11) that does not result in ineffective assistance of counsel. First, Saghir at this time had been subject to disciplinary proceedings and thus was no longer Logan's counsel. Logan was acutely aware of this fact, and yet voluntarily continued to meet with Saghir and listen to her counsel, at his own peril. Logan cannot attack his sentence for ineffective assistance of counsel for actions taken by an attorney who was in fact no longer his counsel.

In any event, even if Saghir's conduct after her termination could be considered, it still would not rise to the level of ineffective assistance of counsel. In Logan's initial petition, he claims that "[a]fter being confused and frustrated by all the attorney's [sic] drama that were [sic] going on in his case, the defendant signed the plea agreement." (Petition at 10.) However, Logan does not allege that he was actually prejudiced by this drama. He does not allege that he was pressured to enter into the plea agreement by his attorney Miller when he signed it or that he did not do so knowingly or voluntarily because of Singh's remarks. Even if he had made such allegations, it would be insufficient. At Logan's plea allocution, he was specifically questioned as to the circumstances surrounding his plea agreement by United States Magistrate Judge William D. Wall :

> Q: Are you making this plea of guilty voluntarily and of your own free will?
> A: Yes.
> Q: Has anyone threatened or forced you to plead guilty?
> A: No.

(Gov't. Ex. 3 at 16.)  See Berry-Gurule v. Lucero, 215 F.3d 1336, at *3 (10th Cir. 2010)

(unpublished) (denying habeas relief based upon allegations of an involuntary and unintelligent

guilty plea although petitioner alleged in part that she had been traumatized by the death of her

child and the injury of her other child; and that she had seen a medical doctor regarding her stress

and depression); Costin v. U.S., 588 F. Supp. 2d 280, 287–88 (D. Conn. 2008) (rejecting claim

that petitioner did not knowingly and voluntarily enter into a plea agreement despite allegedly

suffering from diminished capacity due to battered woman's syndrome, posttraumatic stress

disorder, and major depressive disorder, because during plea colloquy, she stated that she felt

adequately represented by counsel, that she read plea agreements and reviewed them with

counsel, and that she was not coerced in entering the plea agreement).

It is unfortunate that the attorney the Petitioner hired to represent him was subsequently

disbarred by the State of New York as a result of serious allegations of professional misconduct.

Nevertheless, these allegations do not reflect upon any impropriety in Logan's acceptance of the

plea agreement or the sentence that was imposed.  Saghir did not represent Logan during his

guilty plea or his sentencing, and once her disqualification from practicing in this district became

known, this Court immediately appointed competent CJA counsel for Logan.  Thus, even if

Saghir's performance was deficient, Logan was not prejudiced by the short-term and non-

substantive representation by Saghir.  Accordingly, Logan's petition on the ground of ineffective

assistance by Saghir is denied.

### b.  Allegations With Regard to the Petitioner's Court Appointed Counsel

The Petitioner also asserts that Miller's representation amounted to ineffective assistance

of counsel.  According to Logan, he was just a "live body" standing by, who never did any

investigation prior to advising Logan to accept the same plea agreement that was offered to his

prior two attorneys.  (Amended Petition at 3.)  He states that Miller's only focus in representing

him was to get him to sign the plea agreement.  (Petition at 9.)   Logan also claims that Miller

failed to communicate professionally, and "caught an attitude".  (Amended Petition at 4.)

Finally, Logan claims that he requested Miller to submit a Federal Rule of Criminal Procedure

34(a)(1) ("Rule 34") motion based upon defects in his indictment, which Miller refused to do.

Thus, according to Logan, his sentence would have been lowered but for Miller's refusal to act.

However, overall, Logan's claims with regard to Miller's alleged ineffective assistance

amount to little more than conclusory allegations that are unsupported by the record.  See United

States v. Jordan, 870 F.2d 1310, 1318 (7th Cir. 1989) (defendant "offer[ed] no evidence, only

bare allegations," that former counsel failed to advise him of certain matters concerning his

guilty plea), cert. denied, 493 U.S. 831, 110 S. Ct. 101, 107 L. Ed. 2d 65 (1989).

Logan's claims that Miller did not undertake a sufficient investigation of the case and that

Miller pressured Logan to accept the plea agreement are contradicted by his prior sworn

statements, and are unsupported by the record.  Logan stated both during his plea allocution and

sentencing, under oath, that he was satisfied with Miller's legal representation.  (Gov't. Ex. 3 at

7; Gov't. Ex. 4 at 6.)  See United States v. Torres, 129 F.3d 710, 715 (2d Cir. 1997) (considering

that the defendant's "unequivocal admissions under oath contradict[ed] his unsupported

assertions of pressure" by his attorney); United States v. Newson, 46 F.3d 730, 733 (8th Cir.

1995) (finding that the defendant's failure to assert any objections to his counsel's performance

at Rule 11 proceeding refuted any claim of ineffective assistance of counsel as basis for

withdrawing plea); United States v. Winston, 34 F.3d 574, 576 (7th Cir. 1994) (noting that

defendant's claim that his attorney failed to provide him with certain discovery material was

contradicted by his unequivocal statements at Rule 11 hearing that "his attorney had done all that

Mr. Winston had wanted him to do, and that he was satisfied with his attorney's performance");

United States v. Trussel, 961 F.2d 685, 690 (7th Cir. 1992) (finding that a defendant's claim that

he did not receive sufficient advice from counsel was contradicted by record of Rule 11

proceeding, where defendant "specifically stated that he was fully satisfied with his lawyers and

their advice and that his lawyers had done everything he had asked of them"); United States v.

Abdullah, 947 F.2d 306, 312 (8th Cir. 1991) (rejecting claim that defendant was denied effective

assistance of counsel because his attorney pressured him into pleading guilty, since at the Rule

11 proceeding, defendant "stated that he was completely satisfied with the performance of his

counsel and never indicated in any manner that he was under any pressure from counsel to plead

guilty"), cert. denied, 504 U.S. 921, 112 S. Ct. 1969, 118 L. Ed. 2d 569 (1992).

As to the specific claim regarding Miller's inadequate investigation, Logan does not

allege what investigation in particular Miller should have conducted. See U.S. v. Garcia, 57 Fed

App'x 486, 489 (2d Cir. 2003) ("Where the alleged error of counsel is a failure to investigate . . .

the determination whether the error "prejudiced" the defendant by causing him to plead guilty

rather than go to trial will depend on the likelihood that discovery of the evidence would have

led counsel to change his recommendation as to the plea.") (quoting Hill v. Lockhart, 474 U.S.

52, 59, 106 S. Ct. 366, 88 L. Ed. 2d 203 (1985)). Logan's claim is thus deficient in this regard.

He does not cite to a single example of evidence that could have possibly been discovered nor

does he identify any facts that would have had a bearing on the plea negotiations or his decision

to plead guilty. See Winston, 34 F.3d at 578–79 ("although [the defendant] asserts that the

discovery material to which he was denied access would have altered his decision to plead guilty,

he never explains why that is so").

As for Miller's alleged "focus" on Logan entering into a plea agreement, there is nothing to indicate to the Court that Miller's concentration on this outcome was not merely a strategic decision made in Logan's defense. Moreover, even if Logan is alleging that he had been pressured in any way by Miller, his statements during his guilty plea and sentencing confirmed that no one threatened him or forced him to plead guilty. As mentioned above, "a trial court may fairly rely upon a [petitioner's] sworn statements made in open court." Salerno v. Berbary, 389 F. Supp. 2d 480, 484–85 (W.D.N.Y. 2005) (rejecting a petitioner's challenge to validity of guilty plea where his allegations in the habeas proceeding were contradicted by his sworn statements at the plea allocution); see also Sturgis v. U.S., No. 04 Cr. 6140, 2008 WL 2783394, at *6 (W.D.N.Y. July 16, 2008) ("Petitioner alleges that his attorney improperly pressured him into pleading guilty under the plea agreement . . . However, this claim of ineffective assistance of counsel is contradicted by Petitioner's sworn plea allocution, in which he stated that he understood the plea agreement and the rights that he was giving up by pleading guilty, and in which he denied that he was threatened or coerced into pleading guilty.").

Thus, given his prior statements under oath, Logan cannot succeed on his claim that Miller improperly pressured him to accept the plea offer. This is especially true when Logan has not shown that Miller's advice or professional opinion amounted to coercion. See U.S. v. Applebaum, No. 94 CR 209, 1995 WL 723348 at * 10 (S.D.N.Y. Dec. 7, 1995), aff'd 101 F.3d 686 (2d Cir. 1996) ("[W]here, as here, a lawyer recommends in the exercise of his professional judgment, that his client plead guilty, and the client relies upon that advice, the client can not later validly attack his guilty plea on the basis of attorney coercion.") (citation omitted); see also U.S. v. Juncal, 245 F.3d 166, 172 (2d Cir. 2001) ("Nor does defense counsel's blunt rendering of

an honest but negative assessment of appellant's chances at trial, combined with advice to enter the plea, constitute improper behavior or coercion that would suffice to invalidate a plea.").

With regard to Logan's assertion that Miller was merely a "live body" standing by, the record similarly does not support this assertion. Rather, the record reveals that Miller zealously advocated for his client in this Court, articulating several reasons why Logan should receive the lowest possible sentence, including the fact that he was a hardworking individual; had worked with disabled adults; was licensed to work in his field; had always filed his taxes; and had an extensive support network of family and friends. (Gov't Ex. 4 at 7-9.) Moreover, Miller advocated for Logan to be placed in a minimum security facility close to his family so that they could visit them. Based upon the record, there is nothing to indicate that Miller was merely a "live body" who did not advocate on behalf of his client. Logan also claims that Miller failed to communicate professionally and "caught an attitude", but it is not clear what exactly Miller did wrong.

Finally, as for Miller's refusal to submit a Rule 34(a)(1) motion based upon a defect in his indictment, the Court finds in this decision that such a filing would have been frivolous. Therefore, the failure to assert a Rule 34 motion to arrest judgment cannot be considered an error on the part of Miller. See, e.g., Jackson v. Morgenthau, No. 07 Civ. 2757, 2009 WL 1514373, at * 15-16 (S.D.N.Y. May 28, 2009) (finding effective assistance of counsel and dismissing habeas petition when petitioner claimed that trial counsel did not sufficiently challenge the evidence supporting the indictment).

In sum, the Court does not find that Miller's performance fell below an objectively reasonable standard of performance. Therefore, Logan's habeas petition on this ground is denied.

## C.  <u>As to Whether Logan Has Demonstrated Issues as to the Indictment</u>

A large portion of Logan's habeas petition focuses on his desire after his guilty plea to bring a Rule 34 motion to challenge his indictment, and Miller's ineffective assistance of counsel for his failure to do so on his behalf.  There are several initial problems with regard to this particular claim by the Petitioner.

First, the arguments as to the Petitioner's indictment as a general matter are unavailing because, as previously discussed, the Court found that Logan made a knowing and voluntary waiver of his appellate and collateral challenge rights.  Consequently, this waiver serves to bar any collateral attack that —like this final argument — is not predicated on ineffective assistance of counsel.  However, because an assessment of Miller's performance necessarily entails assessing the frivolity of filing a Rule 34 motion, the Court will not dismiss this claim solely on this basis.

Second, Logan's attacks on his indictment must be viewed in light of the fact that his guilty plea was made knowingly and voluntarily.  At the plea hearing, the following transpired:

| | |
|---|---|
| Logan: | On April 15th, 2009, I supplied Michael Hibbert with cocaine, five grams or more. |
| . . . | |
| Mr. Durham: | Your Honor, I believe Mr. Logan said he supplied him with cocaine.  Our lab reports indicate that the substance sold there was cocaine base, which is powder cocaine cooked into a hard form.  If you could—if your Honor would confirm that. |
| The Court: | Okay, is that accurate, Mr. Logan? |
| Mr. Logan: | Cocaine crack. |

(Plea Tr. at 16-17.)  Thus, the Defendant represented to the Court that he sold five grams or more of cocaine base, as Count One of the indictment charged, and Magistrate Judge Wall found that the representation was done voluntarily, and that there was a factual basis for the plea.

Nevertheless, in order to assess whether Miller's performance was deficient in not filing a Rule 34 motion, the Court will determine whether such a motion would have had merit, notwithstanding the considerations set forth above.

### 1.  Legal Standard

Rule 34 of the Federal Rules of Criminal Procedure states, in part, that:

> (a) In General. Upon the defendant's motion or on its own, the court must arrest judgment if:

> (1) the indictment or information does not charge an offense . . .

Fed. R. Crim. P. 34; See U.S. v. Bradford, 194 F.2d 197, 201 (2d Cir. 1952) ("Rule 34 expressly covers motions in arrest on the ground that the indictment does not charge a crime"); United States v. Zisblatt, 172 F.2d 740 (2d Cir. 1949) ("a motion in arrest of judgment will . . . challenge the sufficiency of the indictment.").  "In deciding a Rule 34 motion, 'a court may not look beyond the facts of the record, which consists of no more than the indictment, the plea, . . . and the sentence.'"  United States v. Ashfaq, No. 08 Cr. 1240, 2009 WL 1787717, at *2 (S.D.N.Y. 2009); (quoting United States v. Muyet, 994 F. Supp. 550, 563 (S.D.N.Y.1998) (citations omitted)).

The form of an indictment is governed by Fed. R. Crim. P. 7(c)(1), which provides that "the indictment . . . shall be a plain, concise, and definite written statement of the essential facts constituting the offense charged."  United States v. Macklin, 927 F.2d 1272, 1276 (2d Cir. 1991), cert. denied, 502 U.S. 847, 112 S. Ct. 146, 116 L. Ed. 2d 112 (1991).  In order to satisfy this standard, "[t]he facts alleged must be adequate to permit a defendant to plead former jeopardy

upon prosecution.  The indictment must also be sufficiently specific to enable the defendant to prepare a defense."  United States v. Carrier, 672 F.2d 300, 303 (2d Cir. 1982), cert. denied, 457 U.S. 1139, 102 S. Ct. 2972, 73 L. Ed. 2d 1359 (1982).  In determining whether an indictment is sufficiently stated, the Second Circuit has found that the "indictment need do little more than to track the language of the statute charged and state the time and place (in approximate terms) of the alleged crime."  United States v. Alfonso, 143 F.3d 772, 776 (2d Cir. 1998); see also United States v. LaSpina, 299 F.3d 165, 177 (2d Cir. 2002)

As one court has noted, motions for Rule 34 relief "are rarely made, and it is even rarer that they are granted."  United States v. Douglas, No. 02 Civ. 80863, 2006 U.S. Dist. LEXIS 90035, at *12-13, 2006 WL 3694618 (E.D. Mich. Dec. 13, 2006) (quoting 3 Charles Alan Wright, et al., Federal Practice and Procedure, § 571 (3d ed. 2004)); see also Ashfaq, 2009 WL 11787717, at *2.

## 2.  As to Logan's Indictment

The indictment in this case charged, in part, that Logan committed a conspiracy under 21 U.S.C. § 846, in that he "did knowingly and intentionally conspire to distribute and possess with intent to distribute a controlled substance, which offense involved five grams or more of a substance containing cocaine base, a Schedule II controlled substance, in violation of Title 21, United States Code, Section 841(a)(1)."  An indictment under § 846 "need only allege the existence of a narcotics conspiracy, a relevant time frame, and the statute alleged to be violated." Macklin, 927 F.2d at 1276 (citing United States v. Bermudez, 526 F.2d 89, 94 (2d Cir. 1975), cert. denied, 425 U.S. 970, 96 S. Ct. 2166, 48 L. Ed. 2d 793 (1976) ("These principles apply . . . [to] conspiracies charged under 21 U.S.C. § 846")).  An indictment alleging a conspiracy under

§ 846 does not need to allege specific overt acts in furtherance of the conspiracy, because the conspiracy to distribute narcotics is itself a specific crime.  Bermudez, 526 F.2d at 95.

Here, the Court does not see any error in the charging instrument used to indict the Petitioner.  The indictment alleges that Logan and Hibbert participated in the charged cocaine base conspiracy between November 2008 and on or about April 2009, in violation of § 841(a)(1).  Accordingly, it alleged the existence of a narcotics conspiracy, a relevant time frame, and the statute alleged to be violated.  "As a substantive matter, the Indictment is not flawed because it accurately mirrors the criminal statutes defendant was charged with violating and provides sufficient details to put the defendant on adequate notice of the charges against him."  Pacheco v. U.S., No. 02 Civ. 4266, 2006 WL 760287, at *5 n.52 (S.D.N.Y. March 23, 2006); U.S. v. Vondette, 248 F. Supp. 2d 149, 161 (E.D.N.Y. 2001) ("This first count of the indictment is sufficient: it tracks the language of 21 U.S.C. § 846, it charges the existence of a narcotics conspiracy to distribute and possess with intent to distribute hashish and marijuana and methaqualone, and it includes both a relevant time period, January 1980 to October 30, 1997, and the statutes alleged to have been violated, 21 U.S.C. 846, 841(b)(1)(A)(vii), 841(b)(1)(C), and 18 U.S.C. 3551 et seq.").  Based on the foregoing, even if Miller were to file a Rule 34 motion to dismiss Count One of the Indictment on Logan's behalf, with reasonable certainty, such a motion would have been denied as without merit.

Nevertheless, Logan asserts several grounds why the indictment, at least as to Count One which he pled guilty to, is insufficient.  For example, Logan argues that there is an error in the indictment because it stated the relevant substance as "cocaine base", but did not specify it as "crack".  Thus, he argues that this resulted in a longer sentence because he could have been sentenced for cocaine instead of crack cocaine.  (See Petition at 16.)

As an initial matter, even though the indictment did not specify what type of cocaine base Logan was charged with conspiracy to distribute, this does not logically lead to the presumption that he would have been sentenced for cocaine rather than cocaine base. The two drugs are conceptually distinct in the United States Code and the Sentencing Guidelines. <u>See U.S. v. Montoya</u>, 87 F.3d 621, 623 (2d Cir. 1996) ("the Drug Equivalency Tables, . . . gave one equivalency figure for "Cocaine" and specified a different figure for the substance they designated as "Cocaine Base ('Crack')."). Of course "chemically speaking cocaine *is* a base" <u>DePeierre v. U.S.</u>, ---U.S.---, 131 S. Ct. 2225, 2232, 180 L. Ed. 2d 114 (2011). However, Congress had the intention to use "cocaine base" to distinguish from other cocaine-related substances, such as powder cocaine. Thus, Logan does not allege why he would have been found to violate or would have been sentenced for violations of laws in connection with powder cocaine as opposed to cocaine base.

With regard to the allegation that the indictment did not specify the particular subtype of cocaine base, Logan is correct that not all cocaine base is crack, but rather that crack is one particular form of cocaine base. <u>See</u> Guidelines App. C, Amend. 487 (eff. Nov. 1, 1993) ("Under this amendment, forms of cocaine base other than crack (e.g., coca paste, an intermediate step in the processing of coca leaves into cocaine hydrochloride, scientifically is a base form of cocaine, but it is not crack) will be treated as cocaine."); <u>DePeirre</u>, 131 S. Ct. at 2236 ("For example, an offense involving 5 grams of crack cocaine and one involving 5 grams of coca paste both trigger a minimum 5–year sentence under § 841(b)(1)(B)(iii).").

Nevertheless, it is clear that an indictment need not specifically allege "crack" as opposed to cocaine base, in light of the Supreme Court's recent holding that a jury need not find that a violation specifically involved "crack" in order to convict a defendant of a drug offense

24

involving "cocaine base". See DePeierre, 131 S. Ct. at 2231 ("the term "crack cocaine" appears nowhere in the ADAA (or the United States Code, for that matter). . . . In short, the term "cocaine base" [in the statute] is more plausibly read to mean the "chemically basic form of cocaine," . . . than it is "crack cocaine"); id. at 2237 ("We hold that the term "cocaine base" as used in § 841(b)(1) means not just "crack cocaine," but cocaine in its chemically basic form.")

Moreover, cocaine base is treated synonymously with crack in the Sentencing Guidelines. "'Cocaine base,' for purposes of this guidelines, means 'crack.' 'Crack' is the street name for a form of cocaine base, usually prepared by processing cocaine hydrochloride and sodium bicarbonate, and usually appearing in a lumpy, rocklike form." U.S.S.G. § 2D1.1(c)(D); see U.S. v. Howard, 216 F.3d 1074, at *4 (2d Cir. 2000) (unpublished). "[S]ince November 1, 1993, it has been clear that, where the Guidelines refer to cocaine base for purposes of the enhanced penalty, they are referring only to the sub-type of cocaine base known as crack. Pursuant to the 1993 amendment "forms of cocaine base other than crack . . . will be treated as cocaine"— i.e., without the enhanced penalties." U.S. v. Person, 377 F. Supp. 2d 308, 311 (D. Mass. 2005) (citing U.S.S.G. App. C., Amend. 487 (1993)).

In addition, several circuits have opined that "cocaine base" and "crack cocaine" are interchangeable terms. See U.S. v. Fair, 246 Fed App'x 238, 241 (4th Cir. 2007); United States v. Earnest, 185 F.3d 808, 812 (7th Cir. 1999) ("While precise language is always preferred, we do not live in a world in which people use only the most specific term when speaking. A witness using the term "drug" or "dope" or "cocaine" in addition to the term "crack" does not mean that the substance about which she is speaking is not crack cocaine."). More importantly, "[t]hough the purpose of the higher penalty [for cocaine base] is to deter traffic in crack, a common form of cocaine base, this Circuit has ruled that the higher penalties for cocaine base apply to any

substance within the chemical definition of cocaine base, whether or not it is crack." United States v. Palacio, 4 F.3d 150, 151 (2d Cir. 1993) (citing United States v. Jackson, 968 F.2d 158, 161–63 (2d Cir. 1992)). "Thus, a person convicted of a crime involving cocaine base, regardless of whether the substance was "crack" or some other form of cocaine base, could properly be sentenced under the higher penalties." Moulton v. U.S., No. 01 Civ. 4044, 2002 WL 719624, at *2 (E.D.N.Y. March 27, 2002).

In addition, although the lab report which identified the substance in Logan's possession identified it only as cocaine base and not crack, chemical differentiation between the two is not possible because "crack and all other forms of cocaine base are identical at the molecular level." United States v. Robinson, 144 F.3d 104, 109 (1st Cir. 1998).

The Petitioner attempts to rely on United States v. Thomas, 274 F.3d 655 (2d Cir. 2001), for the proposition that drug type and quantity are elements of the offense under 21 U.S.C. § 841 so that they must be charged in the indictment. However, Thomas merely held "that if the type and quantity of drugs involved in a charged crime may be used to impose a sentence above the statutory maximum for an indeterminate quantity of drugs, then the type and quantity of drugs is an element of the offense that must be charged in the indictment and submitted to the jury." Id. at 660. However, this case is inapplicable because Logan was not sentenced for an indeterminate quantity of drugs, nor was his sentence above the statutory maximum. Cf. id. at 660 n.2 ("In the instant case, however, we refer to the "statutory maximum" to denote the maximum sentence, i.e., twenty years, permitted by § 841(b)(1)(C), the subsection that prescribes the penalty for a crime involving an unspecified amount of cocaine or crack."). The Court sentenced Logan to 63 months, a term of imprisonment well below the 40 year maximum for an offense involving this drug quantity. Thus, neither Thomas nor the earlier Supreme Court case Thomas relies upon,

26

Apprendi v. New Jersey, 530 U.S. 466, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000), require any particular amount of drugs to be pleaded in the indictment. See Diz v. U.S., No. 02 Civ. 3036, 2002 WL 31545835, at *2 (E.D.N.Y. Sept. 27, 2002).

Further weighing against a finding of a failure in the indictment is that in the plea agreement recitation, Logan stated the type and amount of drugs. See U.S. v. Armando Silvestre-Contreras, No. 05 Civ. 339, 2007 WL 1395099, at *4 (D. Conn. May 9, 2007). Logan admitted during his plea allocution that he was selling cocaine base, or "crack cocaine". (Gov't. Ex. 3 at 16-17.) Thus, the record clearly establishes that Logan entered a knowing and willing plea that his crime involved 5 grams or more of "crack" cocaine. See Medina v. United States, No. 01 Civ. 2514, 2002 U.S. Dist. LEXIS 2972 at *9 (E.D.N.Y. Jan. 15, 2002) (holding that plea allocution as to drug quantity satisfies the proof requirements of Apprendi (citing United States v. White, 240 F.3d 127, 134 (2d Cir. 2001) (defendant's stipulation to a drug quantity renders a jury finding on the issue unnecessary); United States v. Champion, 234 F.3d 106, 110 & n. 3 (2d Cir. 2000) (per curiam) (same)); United States v. Thomas, 274 F.3d at 671 (distinguishing Thomas's case from those of defendants who "stipulate or allocute to the drug quantity used the enhance … sentence").

In this regard, the Court agrees with the Government that there was no disconnect or confusion about the type of narcotics involved or Logan's conspiratorial responsibility involving the drugs at issue. See United States v. Johnson, 201 Fed. App'x. 734, 736 (11th Cir. 2006) ("The district court correctly calculated Johnson's offense level based on his possession and distribution of cocaine base, which is defined as crack, because (1) Johnson admitted at his plea hearing that he sold crack; (2) he failed to object to the PSI's factual statement that he distributed cocaine base; (3) he indicated that he agreed with the factual basis for the plea, which stated that

he sold crack cocaine to a confidential source; and (4) the indictment charged him with distributing 'cocaine base, crack cocaine,' as opposed to some other form of cocaine."), cert. denied, 549 U.S. 1297, 127 S. Ct. 1857, 167 L. Ed. 2d 349 (2007); Mack v. United States, No. 07 Civ. 800, 2008 WL 5427804, *6 (M.D. Fla. 2008) ("[T]here was ample evidence that the substance involved in this case was crack cocaine, and an attorney is not ineffective in failing to make a meritless objection.").  Also, at no time during the plea colloquy did Logan or his counsel object to the terminology employed by the Government generally or specifically in the indictment.

Finally, putting aside the issue of waiver mentioned at the outset, it is also well-settled that challenges to the sufficiency of an indictment are generally not cognizable on habeas review. See Davis v. Mantello, 42 Fed. App'x 488, 490 (2d Cir. 2002) ("Claims of deficiencies in state grand jury proceedings are not cognizable in a habeas corpus proceeding in federal court." (citing Lopez v. Riley, 865 F.2d 30, 32 (2d Cir. 1989)); Gray v. Khahaifa, No. 08 Civ. 4889, 2010 WL 2653340, at *11 (E.D.N.Y. June 24, 2010) ("A challenge to the sufficiency of a state indictment is not cognizable on habeas review . . ."); Humphrey v. Fisher, No. 07 Civ. 1200, 2010 WL 7417094, at *19 (N.D.N.Y. July 23, 2010) ("it is well-settled that challenges to the sufficiency of an indictment are generally not cognizable on habeas review."); Younker v. U.S., No. 05 Civ. 10457 et al., 2008 WL 239309, at *2 (S.D.N.Y. Jan. 25, 2008) ("Since petitioner pled guilty to the Indictment on September 13, 2005, she cannot continue to challenge the Indictment under any form of habeas proceeding.").

The only instance in which a defect in an indictment is cognizable on habeas review if "the indictment falls below basic constitutional standards."  Carroll v. Hoke, 695 F. Supp. 1435, 1438 (E.D.N.Y. 1988).  An indictment is deemed constitutionally sufficient if "it charges a crime

with sufficient precision to inform the defendant of the charges he must meet and with enough detail that he may plead double jeopardy in a future prosecution based on the same set of events." De Vonish v. Keane, 19 F.3d 107, 108 (2d Cir. 1994) (quotations and citations omitted). Thus, "an indictment need do little more than to track the language of the statute charged and state the time and place (in approximate terms) of the alleged crime." Stavroulakis, 952 F.2d at 693 (quoting United States v. Tramunti, 513 F.2d 1087, 1113 (2d Cir. 1975)).

The Petitioner does not contend that the indictment did not sufficiently inform him of the charges against him. Nor does he claim that he faced the possibility of double jeopardy based on the vagueness of the accusatory instrument. Thus, the Court finds that notwithstanding the fact that the indictment charged cocaine base generally as opposed to crack cocaine, the indictment in this case was constitutionally sufficient because it afforded Logan with enough detail to inform him of the crime charged and to allow him to plead double jeopardy in a future prosecution based on the same set of events. For this additional reason, the challenge to the sufficiency of Logan's indictment is denied.

On a final note, Logan also argues that while the indictment alleged an "unidentified substance contained cocaine base", it failed to allege that the unidentified substance contained a "detectable amount" of cocaine base. However, the Petitioner has not set forth a single case which notes that there is a requirement that an indictment include this language.

In sum, the Court finds no errors in Logan's indictment and thus, Miller's failure to submit a Rule 34 motion does not constitute ineffective assistance of counsel. His refusal to do so was not an error and, in any event, did not prejudice the Petitioner.

D.  **Whether An Evidentiary Hearing is Needed**

In Logan's reply to the Government's opposition, he asserts that due to the nature of the claims he has raised, he is entitled to an evidentiary hearing.

Section 2255 requires the district court to hold a hearing "unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief."  28 U.S.C. § 2255.  In reviewing the law as to whether to hold a hearing, "a district court has broad discretion to hear further evidence in habeas cases."  Nieblas v. Smith, 204 F.3d 29, 31 (2d Cir. 1999); see also Townsend v. Sain, 372 U.S. 293, 318, 83 S. Ct. 745, 759, 9 L. Ed. 2d 770 (1963) ("In every case [the district judge] has the power, constrained only by his sound discretion, to receive evidence bearing upon the applicant's constitutional claim.").  The rule in this regard is stated in Hayden v. United States, 814 F.2d 888, 892 (2d Cir. 1987) as follows:

> A petition for habeas corpus requires a hearing to resolve disputed issues of fact unless the record shows that the petitioner is not entitled to relief.  28 U.S.C. § 2255.  We have consistently held that the standard to be used in making this determination is whether, "if the evidence should be offered at a hearing, it would be admissible proof entitling the petitioner to relief.  Mere generalities or hearsay statements will not normally entitle the applicant to a hearing, since such hearsay would be inadmissible at the hearing itself.  The petitioner must set forth specific facts which he is in a position to establish by competent evidence." Dalli v. United States, 491 F.2d 758, 760–61 (2d Cir. 1974) (citations omitted).

In Chang v. United States, 250 F.3d 79, 84–86 (2d Cir. 2001), the judge who presided at the underlying trial decided the habeas petition without an evidentiary hearing.  In affirming that determination, the Chang court relied on Section 2255 itself, which expressly provides that the "Court may entertain and determine such motion without requiring the production of the prisoner at the hearing."  28 U.S.C. § 2255.  The Chang court found that a court need not necessarily conduct a "full-blown evidentiary hearing," as it is "within the district court's discretion to

choose a middle road" that adequately expands the record without "the needless expenditure of judicial resources." Chang, 250 F.3d at 86.

In this case, Logan has set raised no material issues of fact requiring a hearing. The Court had before it the indictment, the plea agreement, a complete transcript of the plea allocution and the sentencing proceeding. In addition, Logan's memorandum of law reviewed all of the alleged factual issues raised by him, which the Court finds conclusively belie his allegations. Therefore, in the exercise of the Court's discretion, no evidentiary hearing is required.

## E.  **As to the Certificate of Appealability**

Under Rule 11 of the Rules Governing Section 2254 and Section 2255 Cases in the United States District Courts, the district court "must issue or deny a Certificate of Appealability [("COA")] when it enters a final order adverse to the applicant." A COA should be granted when the Petitioner has made a substantial showing of a denial of a constitutional right. 28 U.S.C. § 2253(c)(2); see Miller-El v. Cockrell, 537 U.S. 322, 336, 123 S. Ct. 1029, 1039, 154 L. Ed. 2d 931 (2003); Lucidore v. New York State Div. of Parole, 209 F.3d 107, 112 (2d Cir. 2000).

In the present case, Logan brought his petition for a writ of habeas corpus on the grounds that he was denied his constitutional rights through ineffective assistance of counsel, and relatedly, alleged defects in his indictment that his counsel refused to contest. However, the Court has determined that the Petitioner was not denied his constitutional rights with respect to any of the grounds he asserted. His grievances with his previous disbarred attorney mainly arose after she was terminated as his counsel of record, and his grievances with his successor counsel are conclusory and contrary to the record. Moreover, the allegations raised by Logan with regard to defects in his charging instrument are without merit.

Therefore, pursuant to Rule 22(b) of the Federal Rules of Appellate Procedure and 28 U.S.C. § 2253(c)(2), as the Petitioner has not made a substantial showing of a denial of a constitutional right, the request for a COA is denied. Miller-El v. Cockrell, 537 U.S. 322, 336, 123 S. Ct. 1029, 1039, 154 L. Ed. 2d 931 (2003); Lucidore, 209 F.3d at 112.

## III. MOTION FOR SENTENCE REDUCTION

### A.  Relevant Law

As a general rule, a federal court "may not modify a term of imprisonment once it has been imposed".  18 U.S.C. § 3582(c); Cortorreal v. United States, 486 F.3d 742, 744 (2d Cir. 2007).  However, Congress has permitted an exception to that rule, as set forth in 18 U.S.C. § 3582(c)(2), as follows:

> in the case of a defendant who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission pursuant to 28 U.S.C. 994(o), . . . the court may reduce the term of imprisonment, after considering the factors set forth in section 3553(a) to the extent that they are applicable, if such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c)(2).  The policy statement governing § 3582(c) proceedings is located in § 1B1.10 of the Guidelines Manual, and, effective November 1, 2011, gives retroactive effect to the Guidelines Amendments.  See § 1B1.10(c).

In Dillon v. United States, --U.S.--, 130 S. Ct. 2683, 177 L. Ed. 2d 271 (2010), the United States Supreme Court identified a two step-inquiry for courts to follow in adjudicating a motion for a sentence reduction under 18 U.S.C. § 3582(c).  At the first step, a court must determine whether the defendant is eligible for a sentence reduction.  Dillon, 130 S. Ct. at 2691.  If, and only if, the court finds that the defendant is eligible for a sentence reduction under § 3582(c) and § 1B1.10, "then the second step of the analytical framework set forth in Dillon requires the

district court 'to consider any applicable § 3553(a) factors and determine whether, in its discretion, the reduction authorized by reference to the policies relevant at step one is warranted in whole or in part under the particular circumstances of the case'". United States v. Mock, 612 F.3d 133, 137 (2d Cir. 2010) (quoting Dillon, 130 S. Ct. at 2692).

In order for a defendant to be eligible for a sentence reduction, the defendant's applicable guideline range must have been lowered by the Guidelines Amendment. See § 1B1.10(a)(1); see also United States v. Johnson, 633 F.3d 116, 117 (2d Cir. 2011). Whether a defendant's guideline range would be lowered under the Guidelines Amendment requires a court to "determine the amended guideline range that would have been applicable to the defendant if the [Guideline Amendment] had been in effect at the time the defendant was sentenced". § 1B1.10(b)(1). "In making such determination, the court shall substitute only the [Guideline Amendment] for the corresponding guideline provisions that were applied when the defendant was sentenced and shall leave all other guideline application decisions unaffected." Id. Application Note 1 to § 1B1.10 further clarifies that the applicable guideline range referenced in § 1B1.10 is "the guideline range that corresponds to the offense level and criminal history category determined pursuant to § 1B1.1(a), which is determined before any departure provision in the Guidelines Manual or any variance". § 1B1.10 Application Note 1(A).

More importantly for purposes of the present determination, is whether and to what extent a reduction is warranted. If the court finds that the defendant is eligible for a sentence reduction under 18 U.S.C. § 3582(c) and U.S.S.G. § 1B1.10, "then the second step of the analytical framework set forth in Dillon requires the district court 'to consider any applicable § 3553(a) factors and determine whether, in its discretion, the reduction authorized by reference

to the policies relevant at step one is warranted in whole or in part under the particular circumstances of the case'". Mock, 612 F.3d at 137 (quoting Dillon, 130 S. Ct. at 2692).

In addition to the traditional § 3553(a) factors, a court can consider the post-sentencing behavior of the defendant and any public safety concerns a reduction in sentence would raise in deciding: (1) whether a reduction in the defendant's term of imprisonment is warranted, and (2) what sentence to impose *within* the applicable amended guidelines range. See § 1B1.10 Application Notes 1(B)(ii–iii); see also United States v. Stewart, 367 Fed. App'x 201, 203 (2d Cir. 2010) ("Moreover, a district court is not prohibited from considering a defendant's record in evaluating a motion for resentencing. To the contrary, a court is 'well within its authority' in denying a resentencing motion on the basis of a defendant's 'extensive criminal history.'") (quoting United States v. Borden, 564 F.3d 100, 104 (2d Cir. 2009)); United States v. Hughes, 374 F. App'x 97 (2d Cir. 2010) (affirming district court's decision to deny a motion for a sentence reduction pursuant to § 3582(c) based on the severity of the defendant's underlying offense, and the defendant's post-sentencing behavior in prison, which the court found indicated that he posed a safety risk).

If, after considering the above-stated factors, the court determines that a sentence reduction is *not warranted* for an otherwise eligible defendant, the court may, in its discretion, deny the motion for a sentence reduction. Of importance, whether to deny an otherwise eligible defendant's motion for a sentence reduction pursuant to 18 U.S.C. § 3582(c) is *discretionary*. See Rivera, 2011 WL 5022734, at * 3 ("A retroactive amendment merely authorizes a reduction in sentence; it does not require one."); United States v. Borden, 564 F.3d 100, 104 (2d Cir. 2009) ("Because the statute states that a district court *may* reduce the term of imprisonment, it clearly

allows for a district court to exercise its discretion when considering a motion to reduce a sentence brought pursuant to § 3582(c)(2).") (emphasis in original).

On the other hand, if, after considering the above-stated factors, the court determines that a sentence reduction *is warranted*, subject to certain limitations, the court may resentence the defendant to a new *term of imprisonment*. See § 1B1.10 Application Note 5(A) ("Only a term of imprisonment imposed as part of the original sentence is authorized to be reduced under this section. This section does not authorize a reduction in the term of imprisonment imposed upon revocation of supervised release."). Specifically, the court cannot reduce the defendant's sentence "to a term that is less than the minimum of the amended guideline range", § 1B1.10(b)(2)(A). This limitation applies regardless of whether the defendant originally received a sentence below the pre-amendment guidelines, unless the below guidelines sentence was imposed "pursuant to a government motion to reflect the defendant's substantial assistance to authorities". § 1B1.10(b)(2)(B). In that case, a court may sentence a defendant to a comparable amount of time below the amended guideline range. Id. However, under no circumstances "may the reduced term of imprisonment be less than the term of imprisonment the defendant has already served". § 1B1.10(b)(2)(C).

**B. As to Whether a Sentence Modification is Warranted**

As the Government acknowledges that Logan is eligible for a sentence reduction under the Guidelines Amendment, the Court will go directly to an analysis as to whether a sentence modification is in fact warranted under the circumstances of this case.

Under the Guidelines Amendment, the Defendant's Base Offense Level that corresponds with 22.06 grams of cocaine base is now 22, as opposed to 26. Thus, after two levels are added for reckless endangerment during flight, and three levels are subtracted for acceptance of

responsibility, the Total Offense Level is now 21, rather than the previous 25.  Thus, with a Criminal History Category of II, the Advisory Guidelines range for the Defendant's conviction is 41 to 51 months.  However, because the Defendant's conviction still carries a 60 month statutory mandatory minimum sentence, his effective Guidelines range is now also 60 months.

"At step two of the inquiry, § 3582(c)(2) instructs a court to consider any applicable § 3553(a) factors and determine whether, in its discretion, the reduction authorized by reference to the policies relevant at step one is warranted in whole or in part under the particular circumstances of the case."  Dillon, 130 S. Ct. at 2692.  In addition to the factors set forth in 18 U.S.C. § 3553(a), the Court "shall consider the nature and seriousness of the danger to any person or the community that may be posed by a reduction in the defendant's term of imprisonment . . . [and the] court may consider post-sentencing conduct of the defendant that occurred after imposition of the term of imprisonment.  See U.S.S.G. § 1B1.10.

After a review of the sentencing memoranda, the PSR, as amended by several Addendum, and the parties' submissions, and consideration of the factors listed in Section 3553(a), particularly the history and characteristics of the defendant, and the applicable policy statements issued by the Sentencing Commission, see U.S.S.G. § 1B1.10, the Defendant's motion for a reduction of his sentence is granted and the sixty-three (63) month term of imprisonment imposed upon the Defendant is reduced to sixty (60) months pursuant to the provisions of 18 U.S.C. 3582(c)(2).

Finally, the Court notes that a hearing in connection with the present sentencing modification is not necessary.  "Federal Rule of Criminal Procedure 43 requires that a defendant be present at "sentencing," see Rule 43(a)(3), but it excludes from that requirement proceedings

that "involv[e] the correction or reduction of sentence under Rule 35 or 18 U.S.C. § 3582(c)," Rule 43(b)(4)." <u>Dillon</u>, 130 S. Ct. at 2696.

## IV. CONCLUSION

For the foregoing reasons, it is hereby

**ORDERED**, that the Petitioner's motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 is **DENIED**; **and it is further**

**ORDERED**, that pursuant to Rule 22(b) of the Federal Rules of Appellate Procedure and 28 U.S.C. § 2253(c)(2), a certificate of appealability is **DENIED**; **and it is further**

**ORDERED**, that the Defendant's motion for a reduction of his sentence pursuant to 18 U.S.C. § 3582(c)(2) is **GRANTED** and the sixty-three (63) month term of imprisonment imposed upon the Defendant is reduced to sixty (60) months.

The Clerk of the Court is directed to close this case.

**SO ORDERED.**

Dated:  Central Islip, New York
February 23, 2012

_____*/s/ Arthur D. Spatt*_____
ARTHUR D. SPATT
United States District Judge